UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEVIN O'CONNOR,

                Plaintiff,

    -against

THE COUNTY OF NASSAU, DETECTIVE TAYLOR
NARDO, AND DETECTIVE JOHN DOE,

                Defendants.

**COMPLAINT**

Docket:

**JURY TRIAL
DEMANDED**

*"This isn't in the ballpark of a crime."*

-Kevin O'Connor's attorney, Bruce Barket, to Detective Taylor Nardo before Mr.
O'Connor's arrest.

## <u>INTRODUCTION</u>

1.      In May of 2023, Kevin O'Connor, a then-27-year-old practicing attorney,
military veteran, and Department of Defense law enforcement agent who was hoping to be
hired as an Assistant District Attorney at the Kings County District Attorney's Office, was
finalizing the details of his divorce settlement. While his failed marriage had caused him
emotional upset, he was looking forward to ending that chapter and embarking on what
appeared to be a promising legal career. Pursuant to his matrimonial litigation, Kevin
O'Connor, then representing himself, authored a letter on May 9, 2023, to his ex-wife's
attorney apprising him of his intent to serve So Ordered subpoenas to individuals he
believed were paying income to his ex-wife, who had failed to report such income in her
Statement of Net Worth, and stating that if the subpoenas were returned with information
inconsistent to her statement to the IRS, Kevin O'Connor "may be obligated" to make
appropriate disclosures. In the same letter, he offered to settle the matter without further
litigation if his ex-wife would execute a real estate contract involving a time share in

Florida owned by both parties. The matrimonial Court had already signed a modified separation agreement wherein she had agreed to execute any and all documents required to transfer the Marriot Time Share at issue into the sole name of Kevin O'Connor. Kevin O'Connor's letter to his ex-wife's attorney was, by all accounts, typical of matrimonial litigation and settlement inquiries. Nonetheless, on May 14, 2023, his ex-wife filed a complaint with the Nassau County Police Department, alleging that through this letter to her attorney, Kevin O'Connor threatened to accuse her of a crime if she did not relinquish her interest in the time share.

2.      Shortly after his ex-wife filed the complaint, Kevin O'Connor received a missed call and voicemail from Detective Taylor Nardo of the Nassau County Police Department while he was out to dinner with friends. He returned the Detective's call and Detective Nardo told Kevin O'Connor that a criminal complaint had been filed against him and instructed him to voluntarily surrender. Kevin O'Connor was shocked, confused, and concerned. As an attorney, he understood that his letter was perfectly legal and that his conduct was not a crime. He expeditiously retained Barket Epstein Kearon Aldea & Loturco, LLP, and attorney Bruce Barket contacted Detective Nardo and apprised Detective Nardo that the allegations did not amount to a crime and that Kevin O'Connor's alleged conduct was typical and legal in matrimonial settlement negotiations. Despite the apparent novelty of the allegations to Detective Nardo, the clear legality of the conduct, and Mr. Barket's pleadings with the Detective, Detective Nardo stated that she was going to arrest Kevin O'Connor nonetheless and let the DA's Office handle the matter.

3.      Kevin O'Connor voluntarily surrendered on June 1, 2023, and was charged with Attempted Coercion in the Third Degree, in violation of Penal Law §110/135.60(4), a class B misdemeanor. Kevin O'Connor, an army veteran with a promising legal career

and no criminal convictions who was finally seeing the light at the end of the divorce tunnel, was terrified that this arrest would ruin his job prospects, his reputation, and derail the progress he had made in finalizing his matrimonial matter. Moreover, as an attorney, he was utterly stunned that police could charge him with a crime he did not commit and, that after retaining an attorney well-versed in criminal law, his attorney's clear explanations to Detective Nardo that the conduct was not illegal would be ignored without any investigation. Upon his surrender, Kevin O'Connor, who posed no threat to Nassau County Police, was handcuffed, processed, brought to Nassau County District Court, and remained incarcerated until his arraignment on June 2, 2023. Despite apprising Detective Nardo and her partner that he had a fractured shoulder, and that the placement of the handcuffs was causing him pain, they continued to handcuff him in manner that exacerbated his pre-existing injury and caused him further injury –a torn rotator cuff—that may require surgery.

4.      On June 16, 2023, the Nassau County District Attorney's Office dismissed the matter and noted that the allegations did not amount to a crime. Although Kevin O'Connor was vindicated, his offer at the Brooklyn DA's Office was withdrawn, he was emotionally distraught and his injuries from his arrest continue to this day.

5.      Kevin O'Connor's charge has now been dismissed by the Nassau County District Court pursuant to CPL §170.30(1)(f), which has held that allegations in the complaint did not make out a crime. He brings the present action seeking compensation for the extraordinary damages he has suffered.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as claims in this action arise under 42 U.S.C. § 1983.

7.     This Court may exercise supplemental jurisdiction over the state law causes of action herein.

8.     Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b), because that is the judicial district in which the claims arose.

## MUNICIPAL LAW OBLIGATIONS

9.     Kevin O'Connor timely served a notice of claim on or about July 27, 2023, within ninety days of when his claims accrued.

10.    A 50-H examination was conducted on January 25, 2024, but since this date Kevin O'Connor's claims have not been settled, adjusted, or otherwise withdrawn.

## PARTIES

11.    Plaintiff, Kevin O'Connor, is a resident of the State of New York and brings the present suit in his individual capacity.

12.    Defendant County of Nassau is a municipal entity in the State of New York, home to the Nassau County Police Department and the Nassau County District Attorney's Office and was the employer of all individually named defendants in this case, all of whom were acting in the scope of their employments under color of law at all relevant times.

13.    Defendant Taylor N. Nardo was at all relevant times a Detective in the Nassau County Police Department acting under color of state law.  She is sued here in her personal capacity.

14.     Defendant John Doe was at all relevant times a Detective in the Nassau County Police Department acting under color of state law.  He is sued here in his personal capacity.

## **STATEMENT OF FACTS**

15.     On or about May 14, 2023, Kevin O'Connor's ex-wife filed a police report in the Nassau County Police Department, alleging that Kevin O'Connor had sent a letter to her matrimonial attorney via email threatening to apprise the IRS and federal government of her failure to report her income if she did not sell a time share they co-owned.

16.     In fact, as evidenced by the letter at issue, Kevin O'Connor (representing himself pro se at the time) wrote to her attorney to apprise him that he had obtained three So Ordered subpoenas from the matrimonial judge to individuals he believed were paying income to his ex-wife, who had failed to report such income in her Statement of Net Worth, and stating that if the subpoenas were returned with information inconsistent to her statement to the IRS, Kevin O'Connor may be required to disclose this to the government.

17.     In the same letter, he offered to settle the matter without further litigation if his ex-wife would execute a real estate contract involving a time share in Florida owned by both parties –an act that she was already required to fulfill pursuant to the Court-ordered modified separation agreement whereby she was supposed to execute all documents required to transfer the time share into the sole name of Kevin O'Connor.

18.     A simple review of the letter demonstrated that no criminal conduct had been committed.

19.     To the contrary, the letter was perfectly legal and typical of matrimonial litigation.

20. Defendant Nardo failed to investigate the contents of the letter or to reasonably evaluate its legality.

21. Despite the legality of the letter, and warnings from a seasoned attorney specializing in criminal justice that the conduct was not criminal in nature, as set forth below, Defendant Nardo decided to charge Kevin O'Connor with a crime he did not commit.

22. On or about May of 2023, Kevin O'Connor received a missed telephone call and voicemail from Defendant Nardo instructing him to call her back. Kevin O'Connor called Defendant Nardo, who told him that he had to voluntarily surrender because of the letter he wrote to his ex-wife's attorney.

23. Kevin O'Connor, an attorney, understood that he had not committed a crime and was therefore both stunned and confused by the conversation he had with Defendant Nardo.

24. Kevin O'Connor retained attorney Bruce Barket with the hopes that an attorney specializing in criminal cases could clarify any confusion or misconception on Detective Nardo's part with respect to the law and to prevent his wrongful arrest.

25. Bruce Barket contacted Defendant Nardo and engaged in several conversations in which he explained why the conduct alleged was legal and did not amount to a crime. Defendant Nardo did not research the issue, nor change her mind. She informed Mr. Barket that Kevin O'Connor would be charged with attempted coercion and that Kevin O'Connor had to voluntarily surrender or be arrested.

26. On June 1, 2024, Kevin O'Connor surrendered to the 7th precinct in Nassau County. There, Defendants Nardo and John Doe processed him, handcuffed him, and arrested him for attempted coercion.

27.     Kevin O'Connor had a pre-existing fractured shoulder when he arrived. He warned Defendants of his shoulder condition and complained of the pain he was experiencing while he was in handcuffs. Detectives did not make any accommodations for his pre-existing injury and kept Kevin O'Connor handcuffed for over 12 hours.

28.     Further, Defendant John Doe warned Kevin O'Connor that complaining about the pain to their sergeant would result in a lengthier incarceration and would delay his arraignment.

29.     Defendant John Doe falsely claimed that any medical complaints would require police to transport Kevin O'Connor to a hospital, and because it was a Thursday, if they facilitated such medical treatment, Kevin O'Connor would likely not be processed until the next day and would not be arraigned until the following Monday because, he claimed, arraignments did not take place on weekends.

30.     Fearing incarceration for four days, Kevin O'Connor acquiesced to Defendant John Doe's advice. Meanwhile, neither Defendant Nardo nor Defendant John Doe adjusted the placement of Kevin O'Connor's handcuffs to ameliorate his pain and suffering.

31.     While Kevin O'Connor was being fingerprinted and booked, Defendant Nardo began to fill out police paperwork documenting false allegations about Kevin O'Connor's conduct and charging him falsely with a B misdemeanor.

32.     Specifically, Defendant Nardo alleged that the complainant informed her that she received notice from her attorney of a letter sent by Kevin O'Connor stating that he wanted the complainant to sell the time share they currently owned and that if she failed to do so, he would be sending subpoenas to her old employers for information about

unreported income and that if information was uncovered he would disclosed that information to the federal government and to the IRS.

33.     Defendant Nardo further alleged that she was informed by the complainant that the matrimonial court's order required her to sign over the time share to Kevin O'Connor, not sell it, and that the complainant had a legal right to abide by the divorce agreement and not be forced into selling the time share.

34.     These allegations by Defendant Nardo are false as they are inconsistent with the contents of the actual letter, and yet, they still do not constitute a crime.

35.     Had Defendant Nardo requested and reviewed the letter accessible to her, she would have understood that these allegations which she alleged in a criminal complaint were inaccurate and that the actual contents did not amount to a crime. In fact, Kevin O'Connor's letter stated that he had obtained So Ordered subpoenas by the judge seeking evidence of unreported income on the part of the complainant and that he was willing to settle if the complainant would sign over (not sell) her share of the time share in his name— something already required of the complainant pursuant to her Court-ordered modified divorce agreement.

36.     Nonetheless, these false, uninvestigated allegations (that also do not amount to a crime) were provided to the Nassau County DA's Office, who then charged Kevin O'Connor with attempted coercion in the third degree and requested an order of protection which was issued by the Judge presiding over his arraignment.

37.     Defendant Nardo falsely alleged that Kevin O'Connor threatened the complainant with an illegal arrest if she did not fulfill a condition, she was not required to fulfill in her divorce settlement.

38.	The documents containing these false assertions were provided to the Nassau County District Attorney's Office, which relied on the paperwork, and the false statements of Defendant Nardo when investigating and charging Kevin O'Connor with attempted coercion.

39.	With the sworn and false statements of Defendant Nardo and falsified police reports and other documentation, the prosecutors were able to charge Kevin O'Connor and make an application for an order of protection, contributing to Kevin O'Connor's loss of a job at the Kings County District Attorney's Office, reputational harm as an attorney, as well as emotional distress.

40.	The defendants acted during all relevant times with actual malice—prosecuting Kevin O'Connor without probable cause, without the pursuit of justice, and instead to serve alternative goals including, but not limited to, obtaining credit and or promotions for another arrest.

41.	Kevin O'Connor was held in custody for 1 day and 1 night between his June 1, 2023, voluntary surrender and his June 2, 2023, arraignment.

42.	As a consequence of the defendants' conduct, Kevin O'Connor was incarcerated for approximately 1 day and 1 night.

43.	Kevin O'Connor suffered extraordinary damages in connection with his false arrest.

44.	Kevin O'Connor suffered severe emotional distress, physical injuries requiring surgery, humiliation, deprivation of dignity, loss of liberty, loss of job prospects, reputational harm, and pecuniary damages.

45.	On or about June 16, 2023, the District Court of New York, County of Nassau, dismissed Kevin O'Connor's  misdemeanor complaint because, as the DA's Office

conceded, the allegations were facially insufficient and did not amount to a crime. In other words, Kevin O'Connor, even if guilty of the alleged conduct, was innocent of a crime, and his arrest and charges were obtained in violation of his constitutional rights.

## CAUSES OF ACTION

### FIRST:  MALICIOUS PROSECUTION UNDER 42 U.S.C. §1983

46.    Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

47.    Defendant Nardo initiated criminal proceedings against Plaintiff in Nassau County, where he was charged with attempted coercion in the third degree.

48.    Defendant John Doe initiated criminal proceedings against Plaintiff in Nassau County, where he was charged with attempted coercion in the third degree.

49.    Defendant Nardo intentionally lied in police reports and to the District Attorney's Office about the contents of the letter Kevin O'Connor wrote to his ex-wife's attorney.

50.    Defendant John Doe intentionally lied in police reports and to the District Attorney's Office about the contents of the letter Kevin O'Connor wrote to his ex-wife's attorney.

51.    Defendant Nardo had notice that the allegations against Kevin O'Connor did not constitute a crime.

52.    Defendant John Doe had notice that the allegations against Kevin O'Connor did not constitute a crime.

53.     Defendant Nardo intentionally refused to investigate the allegations. Specifically, Defendant Nardo failed to secure the letter that contained the alleged criminal conduct.

54.     Defendant John Doe intentionally refused to investigate the allegations. Specifically, Defendant John Doe failed to secure the letter that contained the alleged criminal conduct.

55.     Defendant Nardo intentionally ignored the Penal Law when determining whether Kevin O'Connor had committed a crime.

56.     Defendant John Doe intentionally ignored the Penal Law when determining whether Kevin O'Connor had committed a crime.

57.     Defendants Nardo and John Doe lacked probable cause to believe that Kevin O'Connor was guilty of the charged attempted coercion, knew that they lacked probable cause, but nonetheless arrested Kevin O'Connor.

58.     The criminal charges against Kevin O'Connor were terminated in his favor as his conviction was vacated on the basis of, *inter alia*, facial insufficiency and violations of his constitutional rights, and the case against him was dismissed.

59.     Kevin O'Connor's liberty was restrained prior to his arraignment, including by being detained for 1 day and 1 night before his arraignment.

60.     The prosecution was not supported by probable cause that Kevin O'Connor had committed the charged attempted coercion for which he had been arraigned.

61.     The criminal complaint of Kevin O'Connor was secured through willful indifference to the law and fraud committed by Detective Nardo in her deposition and police paperwork and in conversations with the DA's Office, including, *inter alia*, in her statements that that Kevin O'Connor threatened to have his ex-wife illegally arrested if she

did not sell her share of the time share, and her omission of the letter at issue that Kevin O'Connor drafted and her reliance on the complainant's hearsay statements about the letter.

62.     Defendant Nardo and Defendant John Doe acted during all relevant times with actual malice -- prosecuting Kevin O'Connor without probable cause, without the pursuit of justice, and instead to serve alternative goals including, but not limited to, obtaining credit and promotions for an arrest and to enhance their careers.

63.     Kevin O'Connor suffered substantial damage from the malicious prosecution as set forth above, including, but not limited to, spending approximately 1 day and 1 night incarcerated, and suffering post-traumatic stress disorder, anxiety, loss of a job prospect, and a torn rotator cuff on his shoulder requiring surgery.

64.     In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

65.     Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).


### SECOND:  MALICIOUS PROSECUTION UNDER STATE LAW
### as against Defendants Nardo, John Doe, and Nassau County

66.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

67.     Defendant Nardo and other agents of Nassau County initiated criminal proceedings against Plaintiff in Nassau County, where he was charged with attempted coercion in the third degree.

68.     Defendant John Doe and other agents of Nassau County initiated criminal proceedings against Plaintiff in Nassau County, where he was charged with attempted coercion in the third degree.

69.     Defendant Nardo and other agents of New York City intentionally falsified police reports and lied to the District Attorney's Office, including, *inter alia*, about Kevin O'Connor threatening to have his ex-wife illegally arrested.

70.     Defendant John Doe and other agents of New York City intentionally falsified police reports and lied to the District Attorney's Office, including, *inter alia*, Kevin O'Connor threatening to have his ex-wife illegally arrested.

71.     Defendant Nardo intentionally failed to investigate the allegations by the complainant and intentionally refused to procure the letter alleged to contain the criminal conduct at issue.

72.     Defendant John Doe intentionally failed to investigate the allegations by the complainant and intentionally refused to procure the letter alleged to contain the criminal conduct at issue.

73.     Defendant Nardo intentionally refused to research the Penal Law when contemplating whether the allegations against Kevin O'Connor amounted to a crime.

74.     Defendant John Doe intentionally refused to research the Penal Law when contemplating whether the allegations against Kevin O'Connor amounted to a crime.

75.     Defendant Nardo intentionally ignored the Penal Law and knowing that the allegations did not amount to a crime, authorized the arrest of Kevin O'Connor.

76.     Defendant John Doe intentionally ignored the Penal Law and knowing that the allegations did not amount to a crime, authorized the arrest of Kevin O'Connor.

77.     Defendant Nardo intentionally lied about Kevin O'Connor committing a crime.

78.     Defendant Nardo and Defendant John Doe advised and encouraged the Nassau County District Attorney's Office to prosecute Kevin O'Connor.

79. Defendant Nardo and Defendant John Doe lacked probable cause to believe that Kevin O'Connor was guilty of the charged attempted coercion, knew that they lacked probable cause, and thus fabricated evidence to help secure an arrest, a criminal complaint, and Kevin O'Connor's detention.

80. The criminal charges against Kevin O'Connor were terminated in his favor as the criminal complaint was dismissed on the basis of, *inter alia*, violations of his constitutional rights, and the facial insufficiency of the allegations.

81. Kevin O'Connor's liberty was restrained pre-arraignment, including by being detained for 1 day and 1 night until he was arraigned.

82. The prosecution was not supported by probable cause that Kevin O'Connor had committed the charged attempted coercion for which he had been arraigned.

83. The criminal complaint against of Kevin O'Connor was secured through perjury the recklessness, willful disregard of the law and fraud committed by Defendants Nardo and John Doe in police reports and the criminal complaint, who suborned false statements, including, *inter alia*, that Kevin O'Connor threatened to illegally arrest his ex-wife and that they had probable cause to believe that Kevin O'Connor illegally threatened his ex-wife through a letter written to her attorney.

84. Defendant Nardo and Defendant John Doe acted during all relevant times with actual malice -- prosecuting Kevin O'Connor without probable cause, without the pursuit of justice, and instead to serve alternative goals including, but not limited to, getting credit and promotions for an arrest.

85. The County of Nassau is liable for the malicious prosecution of Kevin O'Connor under a theory of *respondeat superior*, as at all times the defendants and agents

recited herein were acting within the scope of their employment, for the County's benefit and under its control.

86.     Kevin O'Connor suffered substantial damage from the malicious prosecution as set forth above, including, but not limited to, spending approximately 1 day and 1 night in detention, a torn rotator cuff, post-traumatic stress disorder, anxiety, and the loss of job prospects.

87.     In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

88.     Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).


### THIRD:  FALSE ARREST UNDER 42 U.S.C. §1983
### as against Defendants Nardo and John Doe

89.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

90.     Defendant Nardo intended to arrest Plaintiff and caused him to be confined.

91.     Defendant John Doe intended to arrest Plaintiff and caused him to be confined.

92.     Plaintiff was aware of his confinement and did not consent to it.

93.     The arrest and confinement of Plaintiff was not supported by probable cause.

94.     The arrests and confinement of Plaintiff was not otherwise privileged.

95.     The criminal complaint of Kevin O'Connor was secured through recklessness, willful defiance of the Penal Law, perjury and fraud committed by Detectives Nardo and John Doe in the police paperwork and criminal complaint, who suborned false

statements and evidence, including, *inter alia*, allegations that Kevin O'Connor threatened to illegally arrest his ex-wife and that they had probable cause to believe that Kevin O'Connor illegally threatened his ex-wife through a letter written to her attorney.

96.     Plaintiff suffered substantial damage from the false arrest as set forth herein.

97.     In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

98.     Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).


### FOURTH:  FALSE ARREST UNDER STATE LAW
### as against Defendants Nardo and John Doe and Nassau County

99.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

100.    Defendant Nardo intended to arrest Plaintiff and caused him to be confined.

101.    Defendant John Doe intended to arrest Plaintiff and caused him to be confined.

102.    Plaintiff was aware of his confinement and did not consent to it.

103.    The arrests and confinement of Plaintiff was not supported by probable cause.

104.    The arrests and confinement of Plaintiff were not otherwise privileged.

105.    The criminal complaint of Kevin O'Connor was secured through recklessness, willful defiance of the Penal Law, perjury and fraud committed by Detectives Nardo and John Doe in the police paperwork and criminal complaint, who suborned false statements and evidence, including, *inter alia*, allegations that Kevin O'Connor threatened

to illegally arrest his ex-wife and that they had probable cause to believe that Kevin O'Connor illegally threatened his ex-wife through a letter written to her attorney.

106. The County of Nassau is liable for the false arrest of Plaintiff under a theory of *respondeat superior*, as at all times the individually named defendants were acting within the scope of their employment, for the County's benefit and under its control.

107. Plaintiff suffered substantial damage from the false arrest as set forth herein.

108. In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

109. Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).


## FIFTH: EVIDENCE-FABRICATION UNDER 42 U.S.C. §1983
## as against Defendants Nardo and John Doe

110. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

111. Defendants Nardo and John Doe were investigating officials in connection with the charged attempted coercion.

112. Defendants Nardo and John Doe intentionally fabricated that Kevin O'Connor threatened to illegally arrest his wife in a letter to her attorney.

113. They failed to investigate the matter, failed to procure the very letter that allegedly contained the illegal threats, and ignored Kevin O'Connor's attorney's recitations of the contents of the letter and his warnings that the conduct did not amount to a crime.

114. Defendant Nardo, being duly deposed, signed a criminal complaint alleging that Kevin O'Connor illegally threatened his ex-wife through a letter written to her attorney.

115. Defendant Nardo, being duly deposed, signed a criminal complaint alleging that Kevin O'Connor had violated Penal Law 110/135.60(4), attempted coercion in the third degree.

116. The intentional false deposition and police reports containing falsehoods was likely to (and did) influence the District Attorney's decision to file criminal charges against Kevin O'Connor.

117. The District Attorney's Office itself has recognized that Defendants' narratives concerning Kevin O'Connor's conduct was facially insufficient and did not amount to a crime and thus, constituted a violation of Kevin O'Connor's constitutional right to Due Process.

118. Kevin O'Connor suffered a deprivation of liberty as a consequence of the fabricated police reports and deposition.

119. In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

120. Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

121. Defendant Nardo and Defendant John Doe affirmatively fabricated a crime.

122. Defendant Nardo and Defendant John Doe fabricated allegations in connection with the charged attempted coercion -- including, *inter alia*, filing false police reports to the Nassau County District Attorney's Office and signing a false complaint about the events.

123. The information that Defendant Nardo and Defendant John Doe fabricated was likely to (and did) influence the decision by the Nassau County District Attorney's Office to charge Kevin O'Connor with attempted coercion.

124.    Defendant Nardo and Defendant John Doe forwarded the fabricated evidence to the District Attorney's Office.

125.    Kevin O'Connor suffered a deprivation of liberty as a consequence of Defendant Nardo and Defendant John Doe's evidence-fabrication and legal-fabrication, including, but not limited to, spending 1 day and 1 night in detention.

126.    Plaintiff suffered substantial damage as set forth herein.

127.    In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

128.    Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).


### SIXTH:  DUE PROCESS VIOLATION UNDER STATE LAW
### as against Defendants Nardo, John Doe and the County of New York

129.    Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

130.    Defendants Nardo and John Doe were investigating officials in connection with the charged attempted coercion.

131.    Defendants Nardo and John Doe intentionally falsified police reports and lied to the Nassau County District Attorney's Office about the content of Kevin O'Connor's letter to his ex-wife's attorney.

132.    As there was no other supporting evidence, the Defendants' lies were likely to (and did) influence the decision by the Nassau County District Attorney's Office to charge Kevin O'Connor with attempted coercion.

133.    Kevin O'Connor suffered a deprivation of liberty as a consequence of the Defendants' falsified police reports, fabricated evidence, and false statements to the

District Attorney's Officer, including, but not limited to, spending 1 day and 1 night incarcerated.

134.     In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

135.     Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

136.     In addition to falsifying police reports and making false statements, Defendant Nardo and Defendant John Doe affirmatively ignored that the allegations did not constitute a crime.

137.     The information that Defendant Nardo and Defendant John Doe fabricated was likely to (and did) influence Kevin O'Connor's detention and the decision by the Nassau County District Attorney's Office to charge Kevin O'Connor with attempted coercion and to seek an order of protection.

138.     Defendant Nardo and defendant John Doe forwarded the fabricated evidence to the District Attorney's Office.

139.     Kevin O'Connor suffered a deprivation of liberty as a consequence of Defendant Nardo and Defendant John Doe's evidence-fabrication, including, but not limited to, spending approximately 1 day and 1 night incarcerated.

140.     The County of Nassau is liable for under a theory of *respondeat superior*, as at all times the individually named defendants were acting within the scope of their employment, for the County's benefit and under its control.

141.     In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

142.     Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

## SEVENTH:  ABUSE OF PROCESS UNDER 42 U.S.C. §1983
### as against Defendants Nardo and John Doe

143.    Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

144.    Defendants Nardo and John Doe participated in the issuance of criminal process against Kevin O'Connor, including but not limited to his arrest and prosecution.

145.    Defendants Nardo and John Doe intended to do harm to Kevin O'Connor without justification, including but not limited to arresting him for a crime he did not commit.

146.    Defendants Nardo and John Doe used criminal process in an attempt to obtain a collateral objective, including but not limited to meeting their quota for arrests, getting credit, and receiving promotions for the purpose of reputational and career advancement.

147.    Kevin O'Connor was damaged as a consequence of the abuse of process, including but not limited to loss of liberty as well as emotional and physical distress associated with wrongfully spending approximately 1 day and 1 night incarcerated and with handcuffs that injured him.

148.    In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

149.    Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

**EIGHTH:  ABUSE OF PROCESS UNDER STATE LAW**
**as against Defendants Nardo, John Doe, and the County of Nassau**

150.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

151.     Defendants Nardo and John Doe participated in the issuance of criminal process against Kevin O'Connor, including but not limited to his arrest and prosecution.

152.     Defendants Nardo and John Doe intended to do harm to Kevin O'Connor without justification, including but not limited to imprisoning him for a crime he did not commit because they could.

153.     Defendants Nardo and John Doe used criminal process in an attempt to obtain a collateral objective, including but not limited to meeting their quotas for arrests, getting credit, and receiving promotions for the purpose of reputational and career advancement.

154.     Kevin O'Connor was damaged as a consequence of the abuse of process, including but not limited to loss of liberty as well as emotional and physical distress associated with wrongfully spending approximately 1 day and 1 night incarcerated and in handcuffs while he suffered from a pre-existing injury of which he gave Defendants notice.

155.     At all relevant times, Defendants Nardo and John Doe were acting in the scope of their employments.

156.     At all relevant times Defendants Nardo and John Doe were acting with the County of Nassau's assent, for its benefit, and under its control.

157.     The County of Nassau is liable for the wrongdoing of Defendants Nardo and John Doe through the doctrine of *respondeat superior*.

158. In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

159. Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).


## DAMAGES

160. Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

161. As a consequence of the Defendants' conduct, Plaintiff suffered substantial damages, including loss of liberty, emotional distress, physical injuries, damage to his reputation, loss of job prospects, pecuniary damages, and attorneys' fees.

162. The Defendants should be held liable not only to compensate Kevin O'Connor for his damages, but also to pay exemplary damages large enough to dissuade such egregious misconduct from taking place again in the future.

163. The Defendants should be liable to pay attorneys' fees associated with this action as per the terms of 42 U.S.C. §1988(b).

**WHEREFORE**, Plaintiff prays for relief as follows:

A. That the Court award compensatory damages to Plaintiff and against the defendants jointly and severally, in an amount to be determined at trial;

B. That the Court award punitive damages to Plaintiff, and against all defendants, in an amount to be determined at trial that will deter such conduct by defendants in the future;

C. That the Court award attorney's fees pursuant to 42 U.S.C. § 1988;

D. For a trial by jury;

E. For a pre-judgment and post-judgment interest and recovery of their costs; and

F. For any and all other relief to which they may be entitled.

Dated: Garden City, New York
March 19, 2024

**BARKET EPSTEIN KEARON
ALDEA & LOTURCO, LLP**

By: _____
Aida Leisenring, Esq.
Alexander Klein, Esq.