UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEVIN O'CONNOR,

                   Plaintiff,

-against-

COUNTY OF NASSAU, et al.

                   Defendants.

Index: 24-CV-2095 (ST)

# MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO STRIKE

**BARKET EPSTEIN KEARON ALDEA
& LOTURCO, LLP**
666 Old Country Road, Suite 700
Garden City, New York 11530

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 1

   The Underlying Criminal Case ........................................................................................... 1

   The Protracted Delinquency of the Defendants .................................................................. 3

   The Continued Delinquency, Leading to a Warning from the Court that It Would Welcome a Motion to Strike the Defendants' Answer ........................................................................... 5

ARGUMENT .......................................................................................................................... 7

   PLAINTIFF'S MOTION TO STRIKE SHOULD BE GRANTED DUE TO THE DEFENDANTS' "CONTINUING SAGA OF DILATORY CONDUCT". ................................ 7

CONCLUSION ..................................................................................................................... 10

# INTRODUCTION

This case arises from the Plaintiff's warrantless arrest without probable cause, for conduct in divorce proceedings that did not constitute a crime, by a police officer in the Nassau County Police Department who had been informed of the legal infirmity of the (then potential) arrest before it took place and decided to proceed with it anyway. During the course of our investigation into this matter, we have developed a lead suggesting the possibility that the arrest resulted from influence peddled by a local republican officer-holder with whom our client's ex-wife had a close relationship. Thus in the course of discovery here, we interposed a series of demands that included, *inter alia*, a request for the investigating detective's communications concerning our client. But despite the passage of more than a year, multiple letters and conferences with the Court, and missed appearances and blown deadlines by defense counsel, we have still received no response to this demand.

Perhaps the Nassau County Attorney's Office is undergoing turnover, but this type of conduct is not excusable from any litigant let alone from a sophisticated office in charge of handling litigation for one of the most populous counties in New York State. Having received multiple warnings about its obligation to produce these materials, having been given a deadline to produce them on threat of having its answer stricken, and having blown that deadline again, the motion to strike the Defendants' answer should now be granted.

# BACKGROUND

### The Underlying Criminal Case

On March 21, 2024, Kevin O'Connor filed the present lawsuit against Nassau County and Detective Nardo for claims arising from a false arrest that occurred the prior spring. *See* Exhibit A (Complaint). In brief, the arrest emerged from the ashes of divorce proceedings between Mr.

1

O'Connor and his ex-wife. He believed she had secured advantages in asset-distribution that he suspected she obtained fraudulently by underreporting her income to the Court, and that she was illegally refusing to sign over a piece of real estate notwithstanding a separation agreement requiring her to do so. *See* Exhibit A at ¶¶15-17. [1] Bringing both issues to the fore in an attempt to globally resolve the litigation once and for all, he sent a letter to her attorney asking that she sign the real estate conveyance she was obligated to sign, short of which their cantankerous litigation would have to continue, in which case he thought he might have been legally obligated to report her to law enforcement if subpoenaed records confirmed that she was working and earning money without reporting it. *See id*. at ¶¶16-17

Despite (a) the obvious nexus between the real estate conveyance, the believed underreporting of income, and the divorce proceedings,[2] (b) the fact that O'Connor's ex-wife was legally obligated to sign over the real estate in issue,[3] and (c) that O'Connor, acting *pro se*, had not made any overt threats—let alone threats of disclosure with no nexus to the divorce proceedings—Defendant Nardo contacted O'Connor asking him to surrender on charges of attempted criminal coercion. *See* Exhibit A at ¶2.

Before surrendering, O'Connor contacted counsel who promptly corresponded with Defendant Nardo—expressing the invalidity of an arrest because the alleged conduct in divorce settlement discussions, even if true, did not amount to a crime. *Id*. Detective Nardo proceeded

---

[1] See also Exhibit I.
[2] See, e.g., United States v. Jackson, 180 F.3d 55, 70 (2d Cir. 1999) (explaining basic limits of crime of extortion—noting that there "are significant differences between, on the one hand, threatened disclosures of such matters as consumer complaints and nonpayment of dues, as to which the threatener has a plausible claim of right, and, on the other hand, threatened disclosures of such matters as sexual indiscretions that have no nexus with any plausible claim of right"); Lively v. Wayfarer Studios LLC, 786 F. Supp.3d 695, 750 (S.D.N.Y. 2025) (dismissing extortion claims, noting that evidence of extortion emerges in the face of threat to "disclose criminal activity *entirely unrelated to any alleged injury suffered*") (italics in original).

[3] Compare to Penal Law §135.60 (requiring coercion over conduct the counterparty "has a legal right to abstain from engaging in").

with the arrest anyway, and O'Connor, an army veteran and young attorney with no criminal convictions in his life, was handcuffed, injured, processed, and held overnight until his arraignment. *Id*. at ¶3. Two weeks later the invalid charges were dismissed upon the recognition that the conduct did not amount to a crime. *See* Exhibit B (transcript) at 2 (Criminal Defense Counsel: "Your Honor, the defendant wishes to move to dismiss this matter. The Court is aware from the prior conference that the allegations set forth in the accusatory instrument did not make out a crime and should [not] have been charged. … [Prosecutor]: The People join") (dismissing under CPL §170.30(1)(f), which allows for dismissal in the case of a "legal impediment to conviction").

**The Protracted Delinquency of the Defendants**

During the course of investigating the reason for this avoidable ordeal, counsel developed a lead suggesting the possibility that there had been inappropriate influence over the Nassau County law enforcement regime in deciding whether to arrest O'Connor. Given counsel's own direct communications with Detective Nardo before the arrest and the existence of this lead, O'Connor made a series of discovery demands in this resulting civil rights litigation that included, *inter alia*, requests for Detective Nardo's communications relating to him. *See* Exhibit E (document demands) at ¶¶1(b), (c), (d), (h), (j), (k), and (l)).

He made these demands on November 7, 2024. *Id*. To date he has still not received a response. Instead, in the intervening year, the defense has engaged in a longstanding pattern of delinquency marked by missed court appearances, missed deadlines, and violations of court orders despite explicit warnings that their answer could be stricken. In particular:

- On July 11, 2025, defense counsel, then Victoria LaGreca, was absent from a teleconference with the Court, and only after an extended delay did her colleague from

the Nassau County Attorney's Office (with no involvement in the litigation) pick up the phone to handle the conference in Ms. LaGreca's stead.

- Without having produced the missing communications, defense counsel then applied for and obtained an extension of the discovery deadline to September 18, 2025—after which Plaintiff scheduled the deposition of Detective Nardo to occur in mid-August. Weeks before the deposition, on July 30, 2025, Plaintiff requested the communications again. *See* Exhibit D (request).

- With no production, Plaintiff asked for the materials once again on August 11, 2025— our third request—indicating that we needed these communications before taking the examination. *Id*.

- Plaintiff then received a production of materials on August 12, 2025—but there was one problem. They were missing the communications in issue, as we noted in yet another request on August 13, 2025. *Id*.

- In a showing of good faith, despite Plaintiff's repeated requests for the production of these materials before Nardo's deposition, we proceeded with the examination without them.

- With the discovery deadline looming and further documents needed as raised with counsel during Defendant Nardo's examination, we learned with no advanced warning that Ms. LaGreca was no longer with the Nassau County Attorney's Office.

- On September 12, 2025, Plaintiff contacted the attorney in the Nassau County Attorney's Office whom we were told would take over the litigation—named Matthew Klopman. In that email, we proposed that Nassau County request an extension of the discovery deadline in light of Ms. LaGreca's departure, and—once again, for a fifth

time—we inquired about the status of the missing discovery. *See* Exhibit E. We received no response.

- On September 16, 2025, we wrote yet another email about this subject simply to follow up (*id*.)—forwarding the e-mail to Mr. Kloppman's personal email address as well, just in case. We received no response again.

**The Continued Delinquency, Leading to a Warning from the Court that It Would Welcome a Motion to Strike the Defendants' Answer**

On September 17, 2025, Plaintiff filed a letter-motion seeking sanctions against the defense for their non-responsiveness, which at that time was limited to a request to extend the discovery deadline for Plaintiff only—deeming discovery for the defense closed. *See* Exhibit F (ECF Doc. No. 25). The Court issued an order the same day requiring a response from defense counsel by September 24, 2025, and ordering a motion-hearing on September 26. *See* ECF Doc. Entry dated 9/17/2025.

The delinquency from the prior year continued, now across these new deadlines set by the Court. September 24th passed with no response from the defense, and September 26th passed with no appearance from the defense at the hearing. *See* Exhibit G (court order) ("Defense counsel did not appear once again").

On September 26, 2025, the Court thus issued an order with two requirements for the Nassau County Attorney's Office: "to have the new attorney assigned to the case file a Notice of Appearance within 14 days"; and "produce all outstanding discovery responses within 30 days"—i.e., by October 26, 2025. *Id*. And the Court added teeth to the order: "**Failure to comply will result in sanctions, including allowing Plaintiff to make a motion to strike Defendants' Answer for failure to defend.**" *Id*. (emphasis added).

On September 30, 2025, another attorney in the Nassau County Attorney's Office filed a notice of appearance.  *See* Exhibit H.  It was not attorney Klopman.

Yet once again, and now on explicit threat of having their answer stricken, the new grace period for the defense elapsed—as October 26, 2025 passed with no production from the defense whatsoever.  Five days later, still without a production, Plaintiff filed a pre-motion letter seeking to make good on the prior court's order—to strike the Defendants' answer due to their incredibly protracted and repeated violations.

The Court held a conference on November 10, 2025, which this time was attended by defense counsel.  There, defense counsel attempted to excuse their conduct by blaming it on the departure of Attorney Klopman—notwithstanding the fact that Klopman had never filed a notice of appearance on this case, which instead had been filed by present counsel more than a month prior.  The hearing concluded with the Court imploring defense counsel once again to produce the missing materials.

The materials remain absent, and enough is enough.  We respectfully request that the motion to strike the Defendants' answer be granted.

## ARGUMENT

### PLAINTIFF'S MOTION TO STRIKE SHOULD BE GRANTED DUE TO THE DEFENDANTS' "CONTINUING SAGA OF DILATORY CONDUCT."

Under Rule 37 of the Federal Rules of Civil Procedure, a party may move for an order compelling an answer, ... production, or inspection ... if ... a party fails to produce documents ... as requested under Rule 34. *See* Fed. R. Civ. P. 37(a)(3)(B). In turn, such a party may move for sanctions when the adversary "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). The available sanctions include "striking pleadings in whole or in part." *See* Fed. R. Civ. P. 37(b)(2)(A)(iii).

"When considering whether to impose sanctions … courts look to several factors, including "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance." *Rahman v. Red Chili Indian Cafe, Inc.*, 2019 WL 6619893, at *3 (S.D.N.Y. 2019). To be sure, these factors "are not exclusive and none is dispositive, because the text of the rule requires only that the district court's orders be 'just,' and because the district court has wide discretion in imposing sanctions under Rule 37." *Sanchez v. Jyp Foods Inc.*, 2018 WL 4502008, at *3 (S.D.N.Y. 2018) (internal references omitted).

To put a finer point on the analysis, "a single pretrial violation, such as [a] party's failure to respond to a document request by the date ordered, would not ordinarily result in an imposition of a sanction of such finality as striking defendants' answer and entering judgment by default. ... However, a trial court acts within its discretion to impose those sanctions where defendants have engaged in a 'continuing saga of dilatory conduct,' and where they have had 'proper notice' of the

order(s) with which they failed to comply as well as 'an opportunity to argue [their] case against the proposed sanction.'" *Id.* (striking answer in face of "saga of dilatory conduct"). *See also Pelgrift v. 355 W. 51st Tavern Inc.,* 2016 WL 817470, at *2 (S.D.N.Y. 2016) (striking answer).

In practice, when a party's noncompliance is so protracted that it garners an express warning of having an answer stricken, this factor regularly proves dispositive—and has been held in such a context to be "the most critical factor." *Chavez v. ABC Corp.*, 2016 WL 4076580, at *4 (E.D.N.Y. 2016). *See also Sanchez*, at *4 (striking answer, noting the "Court's warnings, coupled with the other factors, weigh in favor of striking the answer"); *Campos v. Quentin Market Corp.*, 2017 WL 9253412 at *3 (E.D.N.Y. 2017) (striking answer, noting "repeated warnings from the Court"); *Zurita v. Bergen Pizza Inc.*, 2015 WL 1602148, at *1 (E.D.N.Y. 2015) (same); *St. Paul Fire & Marine Ins. Co. v. Matrix Posh, LLC*, 2011 WL 13377650, a *1 (E.D.N.Y. 2011) ("given the length of time that outstanding discovery has been pending, Judge Feuerstein's warning to defendant's counsel in the summary judgment decision, this Court's clear order regarding the pending motion to strike defendant's answer, it would seem that striking the answer would be an appropriate remedy at this stage").

That is the scenario presented here—a "continuing saga of dilatory conduct" stretching across an entire year, and the presence of this "most critical factor" of a new deadline with a concomitant warning from the Court as to the consequences of noncompliance, followed by yet another round of noncompliance. In terms of the sanctions factors: other than blaming an attorney who has never filed a notice of appearance on the case, the defense has offered no "reason" for the latest bout of noncompliance; lesser sanctions have already been imposed, including extending discovery for Plaintiff only, but this has had no "efficacy"—and indeed the lesser sanction has been rendered meaningless by the Defendants' noncompliance with its discovery obligations; the

"period of noncompliance" is incredibly long, spanning over twelve months; and the Defendants, which are afforded the legal help of an entire sophisticated office through the Nassau County Attorney's Office, were plainly "warned of the consequences of … noncompliance" and have violated their obligations anyway. *Rahman*, at *3.

At bottom, in the face of the Court's warnings about non-compliance, and in the face of the Defendants' delinquency through those warnings, the orderly administration of justice compels the issuance of the sanction the defense has been on notice of for over a month: striking their answer.

## CONCLUSION

For these reasons, we respectfully request that Plaintiff's motion for sanctions, including striking the Defendants' answer, be GRANTED.

Dated: Garden City, New York
November 19, 2025

Respectfully,

**BARKET EPSTEIN KEARON ALDEA & LOTURCO, LLP**

/s/ *Alexander Klein*
Alexander Klein, Esq.
666 Old Country Road, Suite 700
Garden City, New York 11530