UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEVIN O'CONNOR,

                Plaintiff,

-against-

COUNTY OF NASSAU, et al.

                Defendants.

Index: 24-CV-2095 (ST)

**DECLARATION OF GOOD FAITH**

      **ALEXANDER KLEIN, ESQ.,** being duly sworn, hereby declares the following under penalty of perjury:

      1.     I am a partner at Barket Epstein Kearon Aldea & LoTurco, LLP, firm of record for the Plaintiff, Kevin O'Connor.

      2.     Unless otherwise specified, the following allegations are based upon an inspection of the record in this case, communications with co-counsel in my firm, correspondences with opposing counsel, and other relevant materials.

      3.     I submit this declaration in support of Plaintiff's motion to strike the Defendants' answer.

      4.     On March 21, 2024, Kevin O'Connor filed the present lawsuit against Nassau County and Detective Nardo for claims arising from a false arrest that occurred the prior spring. *See* Exhibit A (Complaint). In brief, the arrest emerged from the ashes of divorce proceedings between Mr. O'Connor and his ex-wife. According to his allegations, he believed she had secured advantages in asset-distribution that he suspected she obtained fraudulently by underreporting her income to the Court, and that she was illegally refusing to sign over a piece of real estate

1

notwithstanding a separation agreement requiring her to do so. *See* Exhibit A at ¶¶15-17.[1] Bringing both issues to the fore in an attempt to globally resolve the litigation once and for all, he sent a letter to her attorney asking that she sign the real estate conveyance she was obligated to sign, short of which their cantankerous litigation would have to continue, in which case he believed he might have been legally obligated to report her to law enforcement if subpoenaed records confirmed that she was working and earning money without reporting it. *See id*. at ¶¶16-17.

5. Despite (a) the obvious nexus between the real estate conveyance, the believed underreporting of income, and the divorce proceedings,[2] (b) the fact that O'Connor's ex-wife was legally obligated to sign over the real estate in issue,[3] and (c) that O'Connor, acting *pro se*, had not made any overt threats—let alone threats of disclosure with no nexus to the divorce proceedings—Nardo contacted O'Connor asking him to surrender on charges of attempted criminal coercion. *See* Exhibit A at ¶2.

6. Before surrendering, O'Connor contacted my partner Bruce Barket who promptly corresponded with Defendant Nardo—expressing the invalidity of an arrest because the alleged conduct in divorce settlement discussions, even if true, did not amount to a crime. *Id*. Detective Nardo proceeded with the arrest anyway, and O'Connor, an army veteran and young attorney with no criminal convictions in his life, was handcuffed, injured, processed, and held overnight until

---

[1] See Exhibit I, which is a true and accurate copy of a provision in O'Connor's modified separation agreement concerning the real estate in issue, which was signed and notarized on February 3, 2023.

[2] See, e.g., United States v. Jackson, 180 F.3d 55, 70 (2d Cir. 1999) (explaining basic limits of crime of extortion—noting that there "are significant differences between, on the one hand, threatened disclosures of such matters as consumer complaints and nonpayment of dues, as to which the threatener has a plausible claim of right, and, on the other hand, threatened disclosures of such matters as sexual indiscretions that have no nexus with any plausible claim of right"); Lively v. Wayfarer Studios LLC, 786 F. Supp.3d 695, 750 (S.D.N.Y. 2025) (dismissing extortion claims, noting that evidence of extortion emerges in the face of threat to "disclose criminal activity *entirely unrelated to any alleged injury suffered*") (italics in original).

[3] Compare to Penal Law §135.60 (requiring coercion over conduct the counterparty "has a legal right to abstain from engaging in").

his arraignment. *Id*. at ¶3. Two weeks later the invalid charges were dismissed upon the recognition that the conduct did not amount to a crime. *See* Exhibit B (transcript) at 2 (Criminal Defense Counsel: "Your Honor, the defendant wishes to move to dismiss this matter. The Court is aware from the prior conference that the allegations set forth in the accusatory instrument did not make out a crime and should [not] have been charged. … [Prosecutor]: The People join") (dismissing under CPL §170.30(1)(f), which allows for dismissal in the case of a "legal impediment to conviction").

7. During the course of investigating the reason for this avoidable ordeal, counsel developed a lead suggesting the possibility that there had been inappropriate influence over the Nassau County law enforcement regime in deciding whether to arrest O'Connor. Given Mr. Barket's own direct communications with Detective Nardo before the arrest and the existence of this lead, Plaintiff, through counsel, made a series of discovery demands in this resulting civil rights litigation that included, *inter alia*, requests for Nardo's communications relating to O'Connor. *See* Exhibit C[4] at ¶¶1(b), (c), (h), (j), (k), (l); 2(b)). These included demands for, respectively, the following information as they related to the relevant investigation into O'Connor:

   a. "Any statements of, notes concerning, discussions with, or reports about potential witnesses, witnesses, or suspects….";

   b. "Any Documents and Recordings reflecting actions taken by any County officers";

   c. "Any and all reports, notes, memoranda, and communications with or by local police departments";

   d. "Any and all communications, including radio communications and transmissions, concerning the investigation or arrest of Plaintiff";

---

[4] Exhibit C reflects a true and accurate copy of document demands issued to defense counsel in this action and maintained in the regular course of business.

e. "Any Documents and Recordings shared between the County and any other law enforcement agency or legal agency concerning the investigation into Plaintiff, including but not limited to e-mails, text messages, social media posts, letters, Documents and Recordings, transcripts, interview notes, witness statements, photographs, reports, test results, etcetera";

f. "Any Documents and Recordings shared among agents of the County concerning the investigation into Plaintiff, including but not limited to e-mails, text messages, social media posts, letters, etcetera"; and

g. "All Documents and Recordings reflecting communications … or contact of any kind with any claimed witnesses to the incident….";

8. We made these demands on November 7, 2024. *Id*. To date we have still not received a response. Instead, in the intervening year, the defense has engaged in a longstanding pattern of delinquency marked by missed court appearances, missed deadlines, and violations of court orders despite explicit warnings that their answer could be stricken. The tortured history includes the following timeline:

a. On July 11, 2025, defense counsel, then Victoria LaGreca, was absent from a teleconference with the Court, and only after an extended delay did her colleague from the Nassau County Attorney's Office (with no involvement in the litigation) pick up the phone to handle the conference in Ms. LaGreca's stead.

b. Without having produced the missing communications demanded the prior November, defense counsel then applied for and obtained an extension of the discovery deadline to September 18, 2025—after which Plaintiff scheduled the

deposition of Nardo to occur in mid-August. Weeks before the deposition, on July 30, 2025, Plaintiff requested the communications again. *See* Exhibit D.[5]

c. With no production, Plaintiff asked for the materials once again on August 11, 2025—our third request—indicating that we needed these communications before taking the examination. *Id*.

d. Plaintiff then received a production of materials on August 12, 2025—but there was one problem. They were missing the communications in issue, as we noted in yet another request on August 13, 2025. *Id*.

e. In a showing of good faith, despite Plaintiff's repeated requests for the production of these materials before Nardo's deposition, we proceeded with the examination without them.

f. With the discovery deadline looming and further documents needed as raised with counsel during Nardo's examination, we learned with no advanced warning that Ms. LaGreca was no longer with the Nassau County Attorney's Office.

g. On September 12, 2025, Mr. Barket contacted the attorney in the Nassau County Attorney's Office whom we were told would take over the litigation—named Matthew Klopman. In that email, Mr. Barket proposed that Nassau County request an extension of the discovery deadline in light of Ms. LaGreca's departure, and— once again, for a fifth time—we inquired about the status of the missing discovery. *See* Exhibit E.[6] We received no response.

---

[5] Exhibit D is a true and accurate copy of e-mail correspondence between the respective law offices of the parties in this litigation.

[6] Exhibit E is a true and accurate copy of e-mail correspondence to Attorney Klopman.

5

h. On September 16, 2025, I wrote yet another email about this subject simply to follow up (*id.*)—forwarding the e-mail to Mr. Klopman's personal email address as well, just in case. We received no response again.

9. By September 17, 2025, our efforts had continued to fail. So we filed a letter-motion seeking sanctions against the defense for their non-responsiveness, which at that time was limited to a request to extend the discovery deadline for Plaintiff only—deeming discovery for the defense closed. *See* Exhibit F (ECF Doc. No. 25). The Court issued an order the same day requiring a response from defense counsel by September 24, 2025, and ordering a motion-hearing on September 26. *See* ECF Doc. Entry dated 9/17/2025.

10. The delinquency from the prior year continued, now across these new deadlines set by the Court. September 24th passed with no response from the defense, and September 26th passed with no appearance from the defense at the hearing. *See* Exhibit G (court order) ("Defense counsel did not appear once again").

11. On September 26, 2025, the Court thus issued an order with two requirements for the Nassau County Attorney's Office: "to have the new attorney assigned to the case file a Notice of Appearance within 14 days"; and "produce all outstanding discovery responses within 30 days"—i.e., by October 26, 2025. *Id*. And the Court added teeth to the order: "**Failure to comply will result in sanctions, including allowing Plaintiff to make a motion to strike Defendants' Answer for failure to defend.**" *Id*. (emphasis added).

12. On September 30, 2025, another attorney in the Nassau County Attorney's Office filed a notice of appearance. *See* Exhibit H. It was not attorney Klopman.

13. Yet once again, and now on explicit threat of having their answer stricken, the new grace period for the defense elapsed—as October 26, 2025 passed with no production from the

6

defense whatsoever.  Five days later, still without a production, Plaintiff filed a pre-motion letter seeking to make good on the prior court's order—to strike the Defendants' answer due to their incredibly protracted and repeated violations.

14. The Court held a conference on November 10, 2025, which this time was attended by defense counsel.  There, defense counsel attempted to excuse their conduct by blaming it on the departure of Attorney Klopman—notwithstanding the fact that Klopman had never filed a notice of appearance on this case, which instead had been filed by present counsel more than a month prior.  The hearing concluded with the Court imploring defense counsel once again to produce the missing materials.

15. Another week has passed, and none of the missing materials has been produced. Our good faith efforts to resolve this matter have failed.

16. For the reasons set forth in the accompanying memorandum of law, we respectfully request that our motion to strike be granted.

*I declare under penalty of perjury that the foregoing is true and correct.*

Dated: Garden City, New York
November 19, 2025

Respectfully,

**BARKET EPSTEIN KEARON ALDEA & LOTURCO, LLP**

/s/ *Alexander Klein*
Alexander Klein, Esq.
666 Old Country Road, Suite 700
Garden City, New York 11530