UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN O'CONNOR,<br><br>                    Plaintiff,<br><br>     -against-<br><br>THE COUNTY OF NASSAU, DETECTIVE TAYLOR<br>NARDO, AND DETECTIVE JOHN DOE,<br><br>                    Defendants. | **COMPLAINT**<br><br>Docket:<br><br><br><br>JURY TRIAL<br>DEMANDED |

*"This isn't in the ballpark of a crime."*

-Kevin O'Connor's attorney, Bruce Barket, to Detective Taylor Nardo before Mr.
O'Connor's arrest.

## INTRODUCTION

1.     In May of 2023, Kevin O'Connor, a then-27-year-old practicing attorney, military veteran, and Department of Defense law enforcement agent who was hoping to be hired as an Assistant District Attorney at the Kings County District Attorney's Office, was finalizing the details of his divorce settlement. While his failed marriage had caused him emotional upset, he was looking forward to ending that chapter and embarking on what appeared to be a promising legal career. Pursuant to his matrimonial litigation, Kevin O'Connor, then representing himself, authored a letter on May 9, 2023, to his ex-wife's attorney apprising him of his intent to serve So Ordered subpoenas to individuals he believed were paying income to his ex-wife, who had failed to report such income in her Statement of Net Worth, and stating that if the subpoenas were returned with information inconsistent to her statement to the IRS, Kevin O'Connor "may be obligated" to make appropriate disclosures. In the same letter, he offered to settle the matter without further litigation if his ex-wife would execute a real estate contract involving a time share in

1

Florida owned by both parties. The matrimonial Court had already signed a modified separation agreement wherein she had agreed to execute any and all documents required to transfer the Marriot Time Share at issue into the sole name of Kevin O'Connor. Kevin O'Connor's letter to his ex-wife's attorney was, by all accounts, typical of matrimonial litigation and settlement inquiries. Nonetheless, on May 14, 2023, his ex-wife filed a complaint with the Nassau County Police Department, alleging that through this letter to her attorney, Kevin O'Connor threatened to accuse her of a crime if she did not relinquish her interest in the time share.

2.      Shortly after his ex-wife filed the complaint, Kevin O'Connor received a missed call and voicemail from Detective Taylor Nardo of the Nassau County Police Department while he was out to dinner with friends. He returned the Detective's call and Detective Nardo told Kevin O'Connor that a criminal complaint had been filed against him and instructed him to voluntarily surrender. Kevin O'Connor was shocked, confused, and concerned. As an attorney, he understood that his letter was perfectly legal and that his conduct was not a crime. He expeditiously retained Barket Epstein Kearon Aldea & Loturco, LLP, and attorney Bruce Barket contacted Detective Nardo and apprised Detective Nardo that the allegations did not amount to a crime and that Kevin O'Connor's alleged conduct was typical and legal in matrimonial settlement negotiations. Despite the apparent novelty of the allegations to Detective Nardo, the clear legality of the conduct, and Mr. Barket's pleadings with the Detective, Detective Nardo stated that she was going to arrest Kevin O'Connor nonetheless and let the DA's Office handle the matter.

3.      Kevin O'Connor voluntarily surrendered on June 1, 2023, and was charged with Attempted Coercion in the Third Degree, in violation of Penal Law §110/135.60(4), a class B misdemeanor. Kevin O'Connor, an army veteran with a promising legal career

2

and no criminal convictions who was finally seeing the light at the end of the divorce tunnel, was terrified that this arrest would ruin his job prospects, his reputation, and derail the progress he had made in finalizing his matrimonial matter. Moreover, as an attorney, he was utterly stunned that police could charge him with a crime he did not commit and, that after retaining an attorney well-versed in criminal law, his attorney's clear explanations to Detective Nardo that the conduct was not illegal would be ignored without any investigation. Upon his surrender, Kevin O'Connor, who posed no threat to Nassau County Police, was handcuffed, processed, brought to Nassau County District Court, and remained incarcerated until his arraignment on June 2, 2023. Despite apprising Detective Nardo and her partner that he had a fractured shoulder, and that the placement of the handcuffs was causing him pain, they continued to handcuff him in manner that exacerbated his pre-existing injury and caused him further injury –a torn rotator cuff—that may require surgery.

4.      On June 16, 2023, the Nassau County District Attorney's Office dismissed the matter and noted that the allegations did not amount to a crime. Although Kevin O'Connor was vindicated, his offer at the Brooklyn DA's Office was withdrawn, he was emotionally distraught and his injuries from his arrest continue to this day.

5.      Kevin O'Connor's charge has now been dismissed by the Nassau County District Court pursuant to CPL §170.30(1)(f), which has held that allegations in the complaint did not make out a crime. He brings the present action seeking compensation for the extraordinary damages he has suffered.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as claims in this action arise under 42 U.S.C. § 1983.

7.     This Court may exercise supplemental jurisdiction over the state law causes of action herein.

8.     Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b), because that is the judicial district in which the claims arose.

## MUNICIPAL LAW OBLIGATIONS

9.     Kevin O'Connor timely served a notice of claim on or about July 27, 2023, within ninety days of when his claims accrued.

10.     A 50-H examination was conducted on January 25, 2024, but since this date Kevin O'Connor's claims have not been settled, adjusted, or otherwise withdrawn.

## PARTIES

11.     Plaintiff, Kevin O'Connor, is a resident of the State of New York and brings the present suit in his individual capacity.

12.     Defendant County of Nassau is a municipal entity in the State of New York, home to the Nassau County Police Department and the Nassau County District Attorney's Office and was the employer of all individually named defendants in this case, all of whom were acting in the scope of their employments under color of law at all relevant times.

13.     Defendant Taylor N. Nardo was at all relevant times a Detective in the Nassau County Police Department acting under color of state law.  She is sued here in her personal capacity.

4

14.     Defendant John Doe was at all relevant times a Detective in the Nassau County Police Department acting under color of state law. He is sued here in his personal capacity.

## STATEMENT OF FACTS

15.     On or about May 14, 2023, Kevin O'Connor's ex-wife filed a police report in the Nassau County Police Department, alleging that Kevin O'Connor had sent a letter to her matrimonial attorney via email threatening to apprise the IRS and federal government of her failure to report her income if she did not sell a time share they co-owned.

16.     In fact, as evidenced by the letter at issue, Kevin O'Connor (representing himself pro se at the time) wrote to her attorney to apprise him that he had obtained three So Ordered subpoenas from the matrimonial judge to individuals he believed were paying income to his ex-wife, who had failed to report such income in her Statement of Net Worth, and stating that if the subpoenas were returned with information inconsistent to her statement to the IRS, Kevin O'Connor may be required to disclose this to the government.

17.     In the same letter, he offered to settle the matter without further litigation if his ex-wife would execute a real estate contract involving a time share in Florida owned by both parties –an act that she was already required to fulfill pursuant to the Court-ordered modified separation agreement whereby she was supposed to execute all documents required to transfer the time share into the sole name of Kevin O'Connor.

18.     A simple review of the letter demonstrated that no criminal conduct had been committed.

19.     To the contrary, the letter was perfectly legal and typical of matrimonial litigation.

20.     Defendant Nardo failed to investigate the contents of the letter or to reasonably evaluate its legality.

21.     Despite the legality of the letter, and warnings from a seasoned attorney specializing in criminal justice that the conduct was not criminal in nature, as set forth below, Defendant Nardo decided to charge Kevin O'Connor with a crime he did not commit.

22.     On or about May of 2023, Kevin O'Connor received a missed telephone call and voicemail from Defendant Nardo instructing him to call her back. Kevin O'Connor called Defendant Nardo, who told him that he had to voluntarily surrender because of the letter he wrote to his ex-wife's attorney.

23.     Kevin O'Connor, an attorney, understood that he had not committed a crime and was therefore both stunned and confused by the conversation he had with Defendant Nardo.

24.     Kevin O'Connor retained attorney Bruce Barket with the hopes that an attorney specializing in criminal cases could clarify any confusion or misconception on Detective Nardo's part with respect to the law and to prevent his wrongful arrest.

25.     Bruce Barket contacted Defendant Nardo and engaged in several conversations in which he explained why the conduct alleged was legal and did not amount to a crime. Defendant Nardo did not research the issue, nor change her mind. She informed Mr. Barket that Kevin O'Connor would be charged with attempted coercion and that Kevin O'Connor had to voluntarily surrender or be arrested.

26.     On June 1, 2024, Kevin O'Connor surrendered to the 7th precinct in Nassau County. There, Defendants Nardo and John Doe processed him, handcuffed him, and arrested him for attempted coercion.

27.     Kevin O'Connor had a pre-existing fractured shoulder when he arrived. He warned Defendants of his shoulder condition and complained of the pain he was experiencing while he was in handcuffs. Detectives did not make any accommodations for his pre-existing injury and kept Kevin O'Connor handcuffed for over 12 hours.

28.     Further, Defendant John Doe warned Kevin O'Connor that complaining about the pain to their sergeant would result in a lengthier incarceration and would delay his arraignment.

29.     Defendant John Doe falsely claimed that any medical complaints would require police to transport Kevin O'Connor to a hospital, and because it was a Thursday, if they facilitated such medical treatment, Kevin O'Connor would likely not be processed until the next day and would not be arraigned until the following Monday because, he claimed, arraignments did not take place on weekends.

30.     Fearing incarceration for four days, Kevin O'Connor acquiesced to Defendant John Doe's advice. Meanwhile, neither Defendant Nardo nor Defendant John Doe adjusted the placement of Kevin O'Connor's handcuffs to ameliorate his pain and suffering.

31.     While Kevin O'Connor was being fingerprinted and booked, Defendant Nardo began to fill out police paperwork documenting false allegations about Kevin O'Connor's conduct and charging him falsely with a B misdemeanor.

32.     Specifically, Defendant Nardo alleged that the complainant informed her that she received notice from her attorney of a letter sent by Kevin O'Connor stating that he wanted the complainant to sell the time share they currently owned and that if she failed to do so, he would be sending subpoenas to her old employers for information about

unreported income and that if information was uncovered he would disclosed that information to the federal government and to the IRS.

33.    Defendant Nardo further alleged that she was informed by the complainant that the matrimonial court's order required her to sign over the time share to Kevin O'Connor, not sell it, and that the complainant had a legal right to abide by the divorce agreement and not be forced into selling the time share.

34.    These allegations by Defendant Nardo are false as they are inconsistent with the contents of the actual letter, and yet, they still do not constitute a crime.

35.    Had Defendant Nardo requested and reviewed the letter accessible to her, she would have understood that these allegations which she alleged in a criminal complaint were inaccurate and that the actual contents did not amount to a crime. In fact, Kevin O'Connor's letter stated that he had obtained So Ordered subpoenas by the judge seeking evidence of unreported income on the part of the complainant and that he was willing to settle if the complainant would sign over (not sell) her share of the time share in his name— something already required of the complainant pursuant to her Court-ordered modified divorce agreement.

36.    Nonetheless, these false, uninvestigated allegations (that also do not amount to a crime) were provided to the Nassau County DA's Office, who then charged Kevin O'Connor with attempted coercion in the third degree and requested an order of protection which was issued by the Judge presiding over his arraignment.

37.    Defendant Nardo falsely alleged that Kevin O'Connor threatened the complainant with an illegal arrest if she did not fulfill a condition, she was not required to fulfill in her divorce settlement.

38.     The documents containing these false assertions were provided to the Nassau County District Attorney's Office, which relied on the paperwork, and the false statements of Defendant Nardo when investigating and charging Kevin O'Connor with attempted coercion.

39.     With the sworn and false statements of Defendant Nardo and falsified police reports and other documentation, the prosecutors were able to charge Kevin O'Connor and make an application for an order of protection, contributing to Kevin O'Connor's loss of a job at the Kings County District Attorney's Office, reputational harm as an attorney, as well as emotional distress.

40.     The defendants acted during all relevant times with actual malice— prosecuting Kevin O'Connor without probable cause, without the pursuit of justice, and instead to serve alternative goals including, but not limited to, obtaining credit and or promotions for another arrest.

41.     Kevin O'Connor was held in custody for 1 day and 1 night between his June 1, 2023, voluntary surrender and his June 2, 2023, arraignment.

42.     As a consequence of the defendants' conduct, Kevin O'Connor was incarcerated for approximately 1 day and 1 night.

43.     Kevin O'Connor suffered extraordinary damages in connection with his false arrest.

44.     Kevin O'Connor suffered severe emotional distress, physical injuries requiring surgery, humiliation, deprivation of dignity, loss of liberty, loss of job prospects, reputational harm, and pecuniary damages.

45.     On or about June 16, 2023, the District Court of New York, County of Nassau, dismissed Kevin O'Connor's misdemeanor complaint because, as the DA's Office

conceded, the allegations were facially insufficient and did not amount to a crime. In other words, Kevin O'Connor, even if guilty of the alleged conduct, was innocent of a crime, and his arrest and charges were obtained in violation of his constitutional rights.

## CAUSES OF ACTION

### FIRST: MALICIOUS PROSECUTION UNDER 42 U.S.C. §1983

46.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

47.     Defendant Nardo initiated criminal proceedings against Plaintiff in Nassau County, where he was charged with attempted coercion in the third degree.

48.     Defendant John Doe initiated criminal proceedings against Plaintiff in Nassau County, where he was charged with attempted coercion in the third degree.

49.     Defendant Nardo intentionally lied in police reports and to the District Attorney's Office about the contents of the letter Kevin O'Connor wrote to his ex-wife's attorney.

50.     Defendant John Doe intentionally lied in police reports and to the District Attorney's Office about the contents of the letter Kevin O'Connor wrote to his ex-wife's attorney.

51.     Defendant Nardo had notice that the allegations against Kevin O'Connor did not constitute a crime.

52.     Defendant John Doe had notice that the allegations against Kevin O'Connor did not constitute a crime.

53.     Defendant Nardo intentionally refused to investigate the allegations. Specifically, Defendant Nardo failed to secure the letter that contained the alleged criminal conduct.

54.     Defendant John Doe intentionally refused to investigate the allegations. Specifically, Defendant John Doe failed to secure the letter that contained the alleged criminal conduct.

55.     Defendant Nardo intentionally ignored the Penal Law when determining whether Kevin O'Connor had committed a crime.

56.     Defendant John Doe intentionally ignored the Penal Law when determining whether Kevin O'Connor had committed a crime.

57.     Defendants Nardo and John Doe lacked probable cause to believe that Kevin O'Connor was guilty of the charged attempted coercion, knew that they lacked probable cause, but nonetheless arrested Kevin O'Connor.

58.     The criminal charges against Kevin O'Connor were terminated in his favor as his conviction was vacated on the basis of, *inter alia*, facial insufficiency and violations of his constitutional rights, and the case against him was dismissed.

59.     Kevin O'Connor's liberty was restrained prior to his arraignment, including by being detained for 1 day and 1 night before his arraignment.

60.     The prosecution was not supported by probable cause that Kevin O'Connor had committed the charged attempted coercion for which he had been arraigned.

61.     The criminal complaint of Kevin O'Connor was secured through willful indifference to the law and fraud committed by Detective Nardo in her deposition and police paperwork and in conversations with the DA's Office, including, *inter alia*, in her statements that that Kevin O'Connor threatened to have his ex-wife illegally arrested if she

did not sell her share of the time share, and her omission of the letter at issue that Kevin O'Connor drafted and her reliance on the complainant's hearsay statements about the letter.

62.     Defendant Nardo and Defendant John Doe acted during all relevant times with actual malice -- prosecuting Kevin O'Connor without probable cause, without the pursuit of justice, and instead to serve alternative goals including, but not limited to, obtaining credit and promotions for an arrest and to enhance their careers.

63.     Kevin O'Connor suffered substantial damage from the malicious prosecution as set forth above, including, but not limited to, spending approximately 1 day and 1 night incarcerated, and suffering post-traumatic stress disorder, anxiety, loss of a job prospect, and a torn rotator cuff on his shoulder requiring surgery.

64.     In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

65.     Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).


### SECOND:  MALICIOUS PROSECUTION UNDER STATE LAW
### as against Defendants Nardo, John Doe, and Nassau County

66.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

67.     Defendant Nardo and other agents of Nassau County initiated criminal proceedings against Plaintiff in Nassau County, where he was charged with attempted coercion in the third degree.

68.     Defendant John Doe and other agents of Nassau County initiated criminal proceedings against Plaintiff in Nassau County, where he was charged with attempted coercion in the third degree.

69.     Defendant Nardo and other agents of New York City intentionally falsified police reports and lied to the District Attorney's Office, including, *inter alia*, about Kevin O'Connor threatening to have his ex-wife illegally arrested.

70.     Defendant John Doe and other agents of New York City intentionally falsified police reports and lied to the District Attorney's Office, including, *inter alia*, Kevin O'Connor threatening to have his ex-wife illegally arrested.

71.     Defendant Nardo intentionally failed to investigate the allegations by the complainant and intentionally refused to procure the letter alleged to contain the criminal conduct at issue.

72.     Defendant John Doe intentionally failed to investigate the allegations by the complainant and intentionally refused to procure the letter alleged to contain the criminal conduct at issue.

73.     Defendant Nardo intentionally refused to research the Penal Law when contemplating whether the allegations against Kevin O'Connor amounted to a crime.

74.     Defendant John Doe intentionally refused to research the Penal Law when contemplating whether the allegations against Kevin O'Connor amounted to a crime.

75.     Defendant Nardo intentionally ignored the Penal Law and knowing that the allegations did not amount to a crime, authorized the arrest of Kevin O'Connor.

76.     Defendant John Doe intentionally ignored the Penal Law and knowing that the allegations did not amount to a crime, authorized the arrest of Kevin O'Connor.

77.     Defendant Nardo intentionally lied about Kevin O'Connor committing a crime.

78.     Defendant Nardo and Defendant John Doe advised and encouraged the Nassau County District Attorney's Office to prosecute Kevin O'Connor.

13

79.     Defendant Nardo and Defendant John Doe lacked probable cause to believe that Kevin O'Connor was guilty of the charged attempted coercion, knew that they lacked probable cause, and thus fabricated evidence to help secure an arrest, a criminal complaint, and Kevin O'Connor's detention.

80.     The criminal charges against Kevin O'Connor were terminated in his favor as the criminal complaint was dismissed on the basis of, *inter alia*, violations of his constitutional rights, and the facial insufficiency of the allegations.

81.     Kevin O'Connor's liberty was restrained pre-arraignment, including by being detained for 1 day and 1 night until he was arraigned.

82.     The prosecution was not supported by probable cause that Kevin O'Connor had committed the charged attempted coercion for which he had been arraigned.

83.     The criminal complaint against of Kevin O'Connor was secured through perjury the recklessness, willful disregard of the law and fraud committed by Defendants Nardo and John Doe in police reports and the criminal complaint, who suborned false statements, including, *inter alia*, that Kevin O'Connor threatened to illegally arrest his ex-wife and that they had probable cause to believe that Kevin O'Connor illegally threatened his ex-wife through a letter written to her attorney.

84.     Defendant Nardo and Defendant John Doe acted during all relevant times with actual malice -- prosecuting Kevin O'Connor without probable cause, without the pursuit of justice, and instead to serve alternative goals including, but not limited to, getting credit and promotions for an arrest.

85.     The County of Nassau is liable for the malicious prosecution of Kevin O'Connor under a theory of *respondeat superior*, as at all times the defendants and agents

recited herein were acting within the scope of their employment, for the County's benefit and under its control.

86.     Kevin O'Connor suffered substantial damage from the malicious prosecution as set forth above, including, but not limited to, spending approximately 1 day and 1 night in detention, a torn rotator cuff, post-traumatic stress disorder, anxiety, and the loss of job prospects.

87.     In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

88.     Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).


### THIRD:  FALSE ARREST UNDER 42 U.S.C. §1983
### as against Defendants Nardo and John Doe

89.     Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

90.     Defendant Nardo intended to arrest Plaintiff and caused him to be confined.

91.     Defendant John Doe intended to arrest Plaintiff and caused him to be confined.

92.     Plaintiff was aware of his confinement and did not consent to it.

93.     The arrest and confinement of Plaintiff was not supported by probable cause.

94.     The arrests and confinement of Plaintiff was not otherwise privileged.

95.     The criminal complaint of Kevin O'Connor was secured through recklessness, willful defiance of the Penal Law, perjury and fraud committed by Detectives Nardo and John Doe in the police paperwork and criminal complaint, who suborned false

statements and evidence, including, *inter alia*, allegations that Kevin O'Connor threatened to illegally arrest his ex-wife and that they had probable cause to believe that Kevin O'Connor illegally threatened his ex-wife through a letter written to her attorney.

96.    Plaintiff suffered substantial damage from the false arrest as set forth herein.

97.    In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

98.    Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).


### FOURTH: FALSE ARREST UNDER STATE LAW
### as against Defendants Nardo and John Doe and Nassau County

99.    Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

100.    Defendant Nardo intended to arrest Plaintiff and caused him to be confined.

101.    Defendant John Doe intended to arrest Plaintiff and caused him to be confined.

102.    Plaintiff was aware of his confinement and did not consent to it.

103.    The arrests and confinement of Plaintiff was not supported by probable cause.

104.    The arrests and confinement of Plaintiff were not otherwise privileged.

105.    The criminal complaint of Kevin O'Connor was secured through recklessness, willful defiance of the Penal Law, perjury and fraud committed by Detectives Nardo and John Doe in the police paperwork and criminal complaint, who suborned false statements and evidence, including, *inter alia*, allegations that Kevin O'Connor threatened

to illegally arrest his ex-wife and that they had probable cause to believe that Kevin O'Connor illegally threatened his ex-wife through a letter written to her attorney.

106.    The County of Nassau is liable for the false arrest of Plaintiff under a theory of *respondeat superior*, as at all times the individually named defendants were acting within the scope of their employment, for the County's benefit and under its control.

107.    Plaintiff suffered substantial damage from the false arrest as set forth herein.

108.    In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

109.    Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).


### FIFTH:  EVIDENCE-FABRICATION UNDER 42 U.S.C. §1983
### as against Defendants Nardo and John Doe

110.    Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

111.    Defendants Nardo and John Doe were investigating officials in connection with the charged attempted coercion.

112.    Defendants Nardo and John Doe intentionally fabricated that Kevin O'Connor threatened to illegally arrest his wife in a letter to her attorney.

113.    They failed to investigate the matter, failed to procure the very letter that allegedly contained the illegal threats, and ignored Kevin O'Connor's attorney's recitations of the contents of the letter and his warnings that the conduct did not amount to a crime.

114.    Defendant Nardo, being duly deposed, signed a criminal complaint alleging that Kevin O'Connor illegally threatened his ex-wife through a letter written to her attorney.

115.    Defendant Nardo, being duly deposed, signed a criminal complaint alleging that Kevin O'Connor had violated Penal Law 110/135.60(4), attempted coercion in the third degree.

116.    The intentional false deposition and police reports containing falsehoods was likely to (and did) influence the District Attorney's decision to file criminal charges against Kevin O'Connor.

117.    The District Attorney's Office itself has recognized that Defendants' narratives concerning Kevin O'Connor's conduct was facially insufficient and did not amount to a crime and thus, constituted a violation of Kevin O'Connor's constitutional right to Due Process.

118.    Kevin O'Connor suffered a deprivation of liberty as a consequence of the fabricated police reports and deposition.

119.    In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

120.    Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

121.    Defendant Nardo and Defendant John Doe affirmatively fabricated a crime.

122.    Defendant Nardo and Defendant John Doe fabricated allegations in connection with the charged attempted coercion -- including, *inter alia*, filing false police reports to the Nassau County District Attorney's Office and signing a false complaint about the events.

123.    The information that Defendant Nardo and Defendant John Doe fabricated was likely to (and did) influence the decision by the Nassau County District Attorney's Office to charge Kevin O'Connor with attempted coercion.

18

124.   Defendant Nardo and Defendant John Doe forwarded the fabricated evidence to the District Attorney's Office.

125.   Kevin O'Connor suffered a deprivation of liberty as a consequence of Defendant Nardo and Defendant John Doe's evidence-fabrication and legal-fabrication, including, but not limited to, spending 1 day and 1 night in detention.

126.   Plaintiff suffered substantial damage as set forth herein.

127.   In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

128.   Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

### SIXTH:  DUE PROCESS VIOLATION UNDER STATE LAW
### as against Defendants Nardo, John Doe and the County of New York

129.   Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

130.   Defendants Nardo and John Doe were investigating officials in connection with the charged attempted coercion.

131.   Defendants Nardo and John Doe intentionally falsified police reports and lied to the Nassau County District Attorney's Office about the content of Kevin O'Connor's letter to his ex-wife's attorney.

132.   As there was no other supporting evidence, the Defendants' lies were likely to (and did) influence the decision by the Nassau County District Attorney's Office to charge Kevin O'Connor with attempted coercion.

133.   Kevin O'Connor suffered a deprivation of liberty as a consequence of the Defendants' falsified police reports, fabricated evidence, and false statements to the

19

District Attorney's Officer, including, but not limited to, spending 1 day and 1 night incarcerated.

134.   In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

135.   Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

136.   In addition to falsifying police reports and making false statements, Defendant Nardo and Defendant John Doe affirmatively ignored that the allegations did not constitute a crime.

137.   The information that Defendant Nardo and Defendant John Doe fabricated was likely to (and did) influence Kevin O'Connor's detention and the decision by the Nassau County District Attorney's Office to charge Kevin O'Connor with attempted coercion and to seek an order of protection.

138.   Defendant Nardo and defendant John Doe forwarded the fabricated evidence to the District Attorney's Office.

139.   Kevin O'Connor suffered a deprivation of liberty as a consequence of Defendant Nardo and Defendant John Doe's evidence-fabrication, including, but not limited to, spending approximately 1 day and 1 night incarcerated.

140.   The County of Nassau is liable for under a theory of *respondeat superior*, as at all times the individually named defendants were acting within the scope of their employment, for the County's benefit and under its control.

141.   In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

142.   Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

## SEVENTH:  ABUSE OF PROCESS UNDER 42 U.S.C. §1983
### as against Defendants Nardo and John Doe

143.    Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

144.    Defendants Nardo and John Doe participated in the issuance of criminal process against Kevin O'Connor, including but not limited to his arrest and prosecution.

145.    Defendants Nardo and John Doe intended to do harm to Kevin O'Connor without justification, including but not limited to arresting him for a crime he did not commit.

146.    Defendants Nardo and John Doe used criminal process in an attempt to obtain a collateral objective, including but not limited to meeting their quota for arrests, getting credit, and receiving promotions for the purpose of reputational and career advancement.

147.    Kevin O'Connor was damaged as a consequence of the abuse of process, including but not limited to loss of liberty as well as emotional and physical distress associated with wrongfully spending approximately 1 day and 1 night incarcerated and with handcuffs that injured him.

148.    In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

149.    Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

## EIGHTH:  ABUSE OF PROCESS UNDER STATE LAW
### as against Defendants Nardo, John Doe, and the County of Nassau

150.    Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

151.    Defendants Nardo and John Doe participated in the issuance of criminal process against Kevin O'Connor, including but not limited to his arrest and prosecution.

152.    Defendants Nardo and John Doe intended to do harm to Kevin O'Connor without justification, including but not limited to imprisoning him for a crime he did not commit because they could.

153.    Defendants Nardo and John Doe used criminal process in an attempt to obtain a collateral objective, including but not limited to meeting their quotas for arrests, getting credit, and receiving promotions for the purpose of reputational and career advancement.

154.    Kevin O'Connor was damaged as a consequence of the abuse of process, including but not limited to loss of liberty as well as emotional and physical distress associated with wrongfully spending approximately 1 day and 1 night incarcerated and in handcuffs while he suffered from a pre-existing injury of which he gave Defendants notice.

155.    At all relevant times, Defendants Nardo and John Doe were acting in the scope of their employments.

156.    At all relevant times Defendants Nardo and John Doe were acting with the County of Nassau's assent, for its benefit, and under its control.

157.    The County of Nassau is liable for the wrongdoing of Defendants Nardo and John Doe through the doctrine of *respondeat superior*.

158.   In addition to compensatory damages, Kevin O'Connor is entitled to punitive damages in light of the extraordinary degree of wrongdoing.

159.   Kevin O'Connor is entitled to attorneys' fees under 42 U.S.C. §1988(b).

## DAMAGES

160.   Plaintiff repeats and realleges all prior paragraphs in this Complaint as if set forth again herein.

161.   As a consequence of the Defendants' conduct, Plaintiff suffered substantial damages, including loss of liberty, emotional distress, physical injuries, damage to his reputation, loss of job prospects, pecuniary damages, and attorneys' fees.

162.   The Defendants should be held liable not only to compensate Kevin O'Connor for his damages, but also to pay exemplary damages large enough to dissuade such egregious misconduct from taking place again in the future.

163.   The Defendants should be liable to pay attorneys' fees associated with this action as per the terms of 42 U.S.C. §1988(b).

**WHEREFORE**, Plaintiff prays for relief as follows:

A.  That the Court award compensatory damages to Plaintiff and against the defendants jointly and severally, in an amount to be determined at trial;

B.  That the Court award punitive damages to Plaintiff, and against all defendants, in an amount to be determined at trial that will deter such conduct by defendants in the future;

C.  That the Court award attorney's fees pursuant to 42 U.S.C. § 1988;

D.  For a trial by jury;

E.  For a pre-judgment and post-judgment interest and recovery of their costs; and

F.  For any and all other relief to which they may be entitled.

Dated: Garden City, New York
March 19, 2024

**BARKET EPSTEIN KEARON
ALDEA & LOTURCO, LLP**

By: _____
Aida Leisenring, Esq.
Alexander Klein, Esq.

24

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

|  |  |
|---|---|
| KEVIN O'CONNOR, | ) |
|  | ) |
|  | ) |
|  | ) |
| *Plaintiff(s)* | ) |
| v. | )    Civil Action No. |
| THE COUNTY OF NASSAU, DETECTIVE TAYLOR NARDO, AND DETECTIVE JOHN DOE | ) |
|  | ) |
|  | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*    THE COUNTY OF NASSAU
One West Street
Mineola, New York 11501

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Aida Fl. Leisenring
> Barket Epstein Kearon Aldea & LoTurco, LLP
> 666 Old Country Road  Suite 700
> Garden City, NY 11530
> 516-745-1500

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

BRENNA B. MAHONEY
*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                              *Server's signature*

                                         _____
                                              *Printed name and title*

                                         _____
                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of New York

|  |  |
|---|---|
| KEVIN O'CONNOR, | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| THE COUNTY OF NASSAU, DETECTIVE TAYLOR | ) |
| NARDO, AND DETECTIVE JOHN DOE | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Detective Taylor Nardo
Nassau Police Department
1490 Franklin Ave,
Mineola, NY 11501

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:      Aida Fl. Leisenring
Barket Epstein Kearon Aldea & LoTurco, LLP
666 Old Country Road, Suite 700
Garden City, NY 11530
516-745-1500

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

BRENNA B. MAHONEY
*CLERK OF COURT*

Date: _____        _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                                    *Server's signature*

                                                        _____
                                                                    *Printed name and title*


                                                        _____
                                                                    *Server's address*

Additional information regarding attempted service, etc:

JS 44   (Rev. 4-29-21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

KEVIN O'CONNOR,

**(b)** County of Residence of First Listed Plaintiff   **Nassau**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Aida Leisenring of Barket Epstein Kearon Aldea
LoTurco,666 Old Country Rd. Suite 700 Garden City NY

## DEFENDANTS

THE COUNTY OF NASSAU, DETECTIVE TAYLOR
NARDO, AND DETECTIVE JOHN DOE

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Nassau County Attorney's Office

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government<br>Plaintiff | ☒ 3 Federal Question<br>*(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government<br>Defendant | ☐ 4 Diversity<br>*(Indicate Citizenship of Parties in Item III)* |

*Does this action include a motion for temporary restraining order or order to show cause?* Yes ☐ No ☑

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>  & Enforcement of **Judgment**<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>  Student Loans<br>  (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>  of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>  Liability<br>☐ 320 Assault, Libel &<br>  Slander<br>☐ 330 Federal Employers'<br>  Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>  Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>  Product Liability<br>☐ 360 Other Personal<br>  Injury<br>☐ 362 Personal Injury -<br>  Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>  Product Liability<br>☐ 367 Health Care/<br>  Pharmaceutical<br>  Personal Injury<br>  Product Liability<br>☐ 368 Asbestos Personal<br>  Injury Product<br>  Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>  Property Damage<br>☐ 385 Property Damage<br>  Product Liability | ☐ 625 Drug Related Seizure<br>  of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>  28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated<br>  New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets<br>  Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br>  3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>  Corrupt Organizations<br>☐ 480 Consumer Credit<br>  (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer<br>  Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>  Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Management<br>  Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>  Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>  Income Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>  Act |
| ☒ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☒ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>  Accommodations<br>☐ 445 Amer. w/Disabilities -<br>  Employment<br>☐ 446 Amer. w/Disabilities -<br>  Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>  Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>  Conditions of<br>  Confinement | **LABOR**<br>☐ 710 Fair Labor Standards<br>  Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>  Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>  or Defendant)<br>☐ 871 IRS—Third Party<br>  26 USC 7609 | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure<br>  Act/Review or Appeal of<br>  Agency Decision<br>☐ 950 Constitutionality of<br>  State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original<br>Proceeding | ☐ 2 Removed from<br>State Court | ☐ 3 Remanded from<br>Appellate Court | ☐ 4 Reinstated or<br>Reopened | ☐ 5 Transferred from<br>Another District<br>*(specify)* | ☐ 6 Multidistrict<br>Litigation -<br>Transfer | ☐ 8 Multidistrict<br>Litigation -<br>Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983
Brief description of cause:
Malicious Prosecution, False Arrest, Violation of Due Process, Abuse of Process

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 03/20/2024 | *[signature]* |

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, Aida Leisenring, Esq. , counsel for Kevin O'Connor , do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☑ monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐ the complaint seeks injunctive relief,

☐ the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more of its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

# NY-E DIVISION OF BUSINESS RULE 1(c)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?   ☐ Yes   ☑ No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?   ☑ Yes   ☐ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?   ☑ Yes   ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?   ☐ Yes   ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☑ Yes         ☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes  (If yes, please explain      ☑ No

I certify the accuracy of all information provided above.

**Signature**: _____

Last Modified: 11/27/2017